**UPS WORLDWIDE FORWARDING, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

UPS Worldwide Forwarding, Inc., Petitioner,

v.

Commonwealth of Pennsylvania, Respondent.

UPS Worldwide Forwarding, Inc., Petitioner,

v.

Commonwealth of Pennsylvania, Respondent.

UPS Worldwide Forwarding, Inc., Petitioner,

v.

Commonwealth of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2003.

Decided March 1, 2004.

Richard D. Birns, Philadelphia, for petitioner.

Kevin A. Moury, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

UPS Worldwide Forwarding, Inc. (Taxpayer) appeals from four orders of the Board of Finance and Revenue (Board) which refused Taxpayer's request to have its Corporate Net Income Tax (CNI Tax) and Franchise Tax for the years 1996 and 1997 recalculated by including a payroll factor along with the property factor and sales factor in the tax apportionment formula found in the Tax Reform Code of 1971 (Tax Reform Code).[1] We affirm.

 Initially, we note that the Franchise Tax is not a tax on property or capital assets, but a tax on the privilege of doing business in Pennsylvania. *Commonwealth v. American Gas Company*, 352 Pa. 113, 42 A.2d 161 (1945). We also note that our Supreme Court recently summarized how corporations who transact business both in Pennsylvania and outside of Pennsylvania apportion their taxes:

> By way of background, Section 401 of the Tax Reform Code permits a company that does not transact all of its business within the Commonwealth ... to apportion its tax liability based upon the ratio of the company's business transacted in the Commonwealth to its total business. 72 P.S. § 7401. **The apportionment formula is an arithmetic average of three factors, *i.e.*, property, payroll and sales factors.** As to each factor, the numerator represents business conducted within Pennsylvania and the denominator represents business conducted everywhere else.

*Commonwealth v. Gilmour Manufacturing Company*, 573 Pa. 143, 822 A.2d 676 (2003) (emphasis added).

In this case, the property and sales factors are not at issue. However, the parties disagree as to whether the payroll factor should be included in the apportionment formula. Pursuant to Pa. R.A.P. 1571(f), the parties entered into a Stipulation of Facts (Stipulation). According to the Stipulation, Taxpayer and UPS Aviation Services, Inc. (UPS–AS) are both wholly owned subsidiaries of UPS–America (UPS). Taxpayer had no employees as

---

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

a matter of the law of employment during the tax years at issue.[2] In fact, all of Taxpayer's services were performed by employees of affiliated companies and independent contractors. Each month, UPS AS transferred to Taxpayer the payroll costs it incurred for its employees who performed Taxpayers' services and Taxpayer paid these costs by inter-company transfer. However, there was no written contract between Taxpayer and UPS–AS with regard to this payroll payment arrangement. In addition, these costs were recorded on Taxpayer's books as payroll expense.

The sole legal issue in this case involves Taxpayer's payroll factor. Specifically, the question is whether Taxpayer is entitled and required to include the amounts it transferred to UPS–AS to fund payroll costs for the individuals who performed Taxpayer's network planning and logistic functions in its payroll factor for the CNI and Franchise Tax apportionment for the 1996 and 1997 tax years.[3]

Taxpayer asserts that, based on the facts set forth above, it has payroll outside of Pennsylvania and that therefore the payroll factor should be included with the property and sales factors in the tax apportionment formula, thereby resulting in a lower total tax. The Commonwealth asserts that Taxpayer has no payroll. Therefore, only the property and sales factors should be included in the apportionment formula, thereby resulting in a higher total tax. As illustrated by the sample calculations for the 1996 Franchise Tax set forth in the Commonwealth's brief and reproduced below, the question is whether the property, sales, and payroll factors should be added together and divided by three, resulting in a lower tax for Taxpayer, or whether only the property and sales factors should be added together and divided by two, resulting in a higher tax for Taxpayer.

Taxpayer Position
1996 Franchise Tax

| | | | |
|---|---|---|---|
| PROPERTY | 0 / 91,579,302 | = | .000000 |
| PAYROLL | 0 / 475,787 | = | .000000 |
| SALES | 121,960,686 / 4,512,592,036 | = | .027027 |
| AVERAGE (DIVIDE BY 3) | | | .009009 |
| 1996 Fixed Formula Value (undisputed) | | | 3,159,761,089 |
| Taxable Portion as calculated above | | | .009009 |
| Value apportionable to Pennsylvania | | | 28,466,288 |
| Tax Rate | | | .01275 |
| Tax Due | | | $362,945 |

Commonwealth Position
1996 Franchise Tax

| | | | |
|---|---|---|---|
| PROPERTY | 0 / 91,579,302 | = | .000000 |
| PAYROLL | 0 / 0 | = | Not applicable |
| SALES | 121,960,686 / 4,512,592,036 | = | .027027 |
| AVERAGE (DIVIDE BY 2) | | | .013514 |
| 1996 Fixed Formula Value (undisputed) | | | 3,159,761,089 |
| Taxable Portion as calculated above | | | .013514 |
| Value apportionable to Pennsylvania | | | 42,701,011 |
| Tax Rate | | | .01275 |
| Tax Due | | | $544,438 |

2. On April 1, 1998, the employees of UPS–AS who performed Taxpayer's network planning and logistic functions became formal employees of Taxpayer. Thus, whether Taxpayer is permitted to use the three factor apportionment formula is not an issue in successive tax years.

3. "In appeals from decisions of the Board, we have the broadest scope of review because the Commonwealth Court functions as a trial court, even though such cases are heard in our appellate jurisdiction." *Shawnee Development, Inc. v. Commonwealth of Pennsylvania*, 764 A.2d 659, 660 (Pa.Cmwlth.2000).

For the 1997 tax year, using the formula advocated by Taxpayer would result in $535,482 in Franchise Tax. For the 1997 tax year, using the formula advocated by the Commonwealth would result in $803,273 in Franchise Tax. (Stipulation, paras. 49 and 50).

Although neither party provided a similar breakdown for the CNI Tax, the same apportionment factors are used for both taxes. Thus, including the payroll factor and dividing by three as advocated by Taxpayer would result in a lower CNI Tax of $1,881,258 for 1996 and $2,684,108 for 1997. Not including the payroll factor and dividing by two as advocated by the Commonwealth would result in a higher CNI Tax of $2,524,898 for 1996 and $3,595,403 for 1997. (Stipulation, paras. 49 and 50).

In support of its contention that the payroll factor should be used in the tax apportionment formula, Taxpayer principally relies on our Supreme Court's decision in *American Gas*. In that case, the taxpayer, a public utility and holding company, had a written management agreement with its parent corporation, United Gas Improvement Company (United Gas). The agreement provided that United Gas would provide to taxpayer from its organization five corporate officers, including a vice-president, secretary, treasurer, comptroller and general counsel to perform duties as directed by taxpayer. The agreement also provided that "no salaries are to be paid by [taxpayer] to these Officers, but for their services and the services of their departments we agree to pay you [United Gas] $500[0] per year in equal monthly installments ..." *Id.* at 115, 42 A.2d at 162. In addition, taxpayer agreed to reimburse United Gas for the travel and living expenses of these officers while performing services for taxpayer away from the Philadelphia office of United Gas. In taxpayer's franchise tax settlement, the Commonwealth used as a numerator and denominator $5000, which represented the management fee paid by taxpayer to United Gas for supplying the five officers to taxpayer. The Dauphin County Court of Common Pleas upheld the Commonwealth's settlement of taxpayer's franchise tax in this regard.

On appeal to the Supreme Court, taxpayer contended that the $5000 payment was a corporate expense but not a payment of wages or salaries. The Supreme Court rejected the taxpayer's argument and held that:

> This agreement was a contract for the services of five officers and for clerical assistance. These officers under the law were officers of [taxpayer], despite their relation to United Gas Improvement Company, who had definite statutory obligations to [taxpayer] as its employees. The device of paying their salaries through the parent corporation was ingenious but not conclusive of their status. It is unlikely that the United Gas Improvement Company would contend that it is engaged in the labor brokerage business, supplying trained personnel to other corporations. It is clear that the amounts designated for each of the officers of the [taxpayer] were salaries which the officers were to receive indirectly through the United Gas Improvement Company. The court below has held that these persons were employees of appellant engaged in [taxpayer's] business during the year 1935, and that the sums paid to the United Gas Improvement Company for them were wages and salaries within the meaning of the Franchise Tax Act. The record supports this conclusion and it is affirmed.

*Id.* at 116, 42 A.2d at 162–163. Taxpayer asserts that, under the reasoning set forth in *American Gas,* Taxpayer also had a

payroll expense during the tax years at issue and therefore the payroll tax factor should be used in the calculation of its CNI Tax and Franchise Tax.

The Commonwealth argues that the *American Gas* decision does not apply to this case because: 1) the Supreme Court in *American Gas* relied on the finding of the court below that the individuals in question were employees of Taxpayer and no such finding or evidence is in the record of this case, 2) there was no written agreement between Taxpayer and UPS–AS, 3) *American Gas* involved corporate officers whose obligations and connections to the taxpayer were statutory, while in the instant case, there is no evidence of the status of any employees of Taxpayer and 4) there is no evidence on the record as to who was in control of the individuals who performed the planning and logistic functions for Taxpayer.

The Commonwealth also points out that the Section 401 of the Tax Reform Act defines "compensation" as:

> "Compensation" means wages, salaries, commissions and any other form of remuneration paid to employees for personal services.

72 P.S. § 7401(3)2(a)(1)(C). Taxpayer stipulated that it did not have any employees. Because it did not have any employees, it paid no compensation. Therefore, because it paid no compensation, the Commonwealth reasons that it had no payroll. Thus, the Commonwealth argues that the payroll factor must be disregarded in the tax apportionment calculation. We agree.

The situation in this case is similar to *American Gas*, in that the taxpayers were both using out of state companies to furnish services to a related company in Pennsylvania and, in both cases, an expense was charged for the services performed. There are, however, important differences. In *American Gas*, the indi-

viduals at issue were found to be employees of the taxpayer, were officers of the taxpayer and were paid a sum certain for the defined services. In this case, Taxpayer stipulated that it had no employees as a matter of the law of employment during the tax years at issue. Because Taxpayer did not have any employees, we agree with the Commonwealth that, although Taxpayer had an expense charged to it, it could not have paid any compensation as that term is defined in the Tax Reform Code and thus had no *payroll* expenses. The Commonwealth's interpretation of the term "compensation" in this regard is reasonable and is entitled to deference from this Court. *See Tool Sales & Service Co., Inc. v. Commonwealth*, 536 Pa. 10, 22, 637 A.2d 607, 613 (1993) (It is a well established principle of administrative law that agencies are entitled deference in interpreting the statutes they enforce.") Further, Taxpayer has no evidence of record that it had control of any of the employees who performed planning and logistics for it as compared to *American Gas*, where the taxpayer had a written management agreement governing the employees involved who were officers of the taxpayer and legally obligated to the control of the taxpayer. Therefore, we are persuaded by the Commonwealth's argument that this case is distinguishable from *American Gas*. Because *American Gas* is not controlling, we conclude that the payroll factor must be disregarded in the tax apportionment calculation for the tax years at issue.

Accordingly, the orders of the Board are affirmed.

## ORDER

AND NOW, March 1, 2004, the orders of the Board of Finance and Revenue docketed at 0001650, 0001651, 0016500, 0016501 and dated December 20, 2000 are

 

hereby AFFIRMED. Pursuant to Pa. R.A.P. 1571(i), exceptions may be filed within 30 days of the date of this order.